Next we'll hear United States v. Roy Nain. May it please the court, for the appellant John Esposito, good morning, your honors. Your honor, I'm here today asking this court to reverse the top count of the conviction, the third count of the indictment, as to the attempted sexual exploitation. Send the case back to Judge Garifas for a de novo review of sentencing. It may come back at some point that he gets the same 15 years, but as to the top count of attempted sexual exploitation, I believe that there clearly was insufficient evidence as to that particular count with respect to the intent element, as well as with respect to an attempt, the substantial step element. I believe that an affirmance in this case as to that particular count, and that count only, would represent a most expansive interpretation of the definition, the understanding of the mens rea element of intent, as well as a most expansive interpretation of the applicable law as to an attempt. So isn't the evidence viewed in the light most favorable to the government, which is how we have to view it, that Mr. Nain basically requested yet another video of some activity that had already occurred? I believe that that clearly is the standard of review. This case, as in most cases, cannot be looked at in a vacuum in terms of the facts. In this particular case, Judge, it is critical to look at the facts and the time span that's involved and the roles of the various players during that time span. We are talking about a time span of May 2012 through September 2013. In May of 2012, John Johnson, who I'm going to call the exploiter in this case, was a one-man show, a one-man act. He's a creator, producer, marketer. He's doing everything from A to Z, without going through that list, in terms of producing videos that he's then setting out and selling on the Internet. And those videos are exploiting, they're containing depictions of young children engaged in sexual acts. Those videos are then being transmitted and sold. He is the seller. All right, but now let's talk about what your client did. Judge, in May of 20- The client contacts him and tells him he wants another one, knowing that it will have to be created. It's not like he's going to, it's not like this individual is going to be able to pull it off the shelf and send it to him that afternoon. Why doesn't that bespeak your client's intent to have a child exploited? Because under the facts and circumstances of this case, Judge, and I think Judge Garifuss is wrong in that analysis- favorably to the government. How does that not support your client's intent to exploit a child? Because in the first instance, with respect to that, it is a mere request, but most importantly, Judge, it's in the context of eight months of my client being an end user, a buyer. So for eight months, he has all the knowledge that Judge Garifuss ascribes to him in terms of what John Johnson is doing, what he's saying. It's clear in this case that my client goes for eight months as a buyer, then morphs somehow for a period of two weeks into someone wearing two hats. He's now a buyer and seller for that period where he makes the request. And then for the final four months of the interaction, he somehow morphs back into a buyer. And the question is, knowing that- Not only a buyer, someone who solicits the creation of the film. And so, I mean, it seems to me the very facts you're citing us to help the government. What am I missing here? Judge, by analogy, if you look at- and I don't believe that it's inapplicable because there's other statutory provisions, because there's a causation element here. If you make a comparison to drug dealing, gun running, or any other criminal act where you have two parties with one party requesting the production on the other end, the request for production itself in almost every case does not constitute a request and an actual attempt to commit the crime. If I have- Now we're talking about whether it's enough to prove your client's intent that a child be exploited. You're saying there's no insufficient evidence to prove that he intended for a child to be exploited. And I'm not sure how calling up and saying, I want another film, when it's clear he knew that the film didn't exist, it would have to be created, speaks to any other intent than that a child be exploited. I believe that that isn't conflating the knowledge element. He knows that John Johnson, the exploiter, has to create a new film- Don't make that argument. The knowledge, and then the knowledge that he has plus the action that he takes is what proves his intent. And the action he takes, Judge, is a mere request for the receipt. He would be guilty as he was for eight months and for four months later and throughout the whole course of the 16 months. He was guilty. He was found guilty. The attorney from the inception said he was guilty of receiving these videos. And by happenstance- So what about, let me give you just a hypothetical of, this never happens in Vermont, of course, but I understand it happens down here. I say, I want a Mercedes 280 SL and I go find a guy and I say, if you'll go get me one of those, I'll pay you for it. Am I guilty of- Judge, I don't believe in that scenario that you're guilty of actually knowing that that person may be going to obtain it somewhere illegally. You would be, and that's the perfect example, you would be, if you knew he was going to steal it, you would be guilty of possession. Go get me one up in the village here. I'm sure there are a bunch parked on the street. You can go in, use your key thing and drive it down to me and I'll pay you. And I think that that is the perfect example on why it applies and it's applicable to this case. What about 18 U.S.C. Section 2? Judge, in that particular case he is, in your example, he is basically guilty of a crime and I believe he's guilty of possession. He's not basically under the facts of- I'm intending that he steal it. You're knowledgeable that he's stealing. I don't believe on those facts or similar facts. If I am a buyer of guns in New York City and I know that my gun runner comes from Louisiana like John Johnson and he has to go to Louisiana to get guns and he's delivered guns to me in the past and I've received them and I possess them and then on some occasion I said, I want this special gun, just like this video, and he says, well, we don't have those. We're going to have to go to Louisiana and get them. And I say, fine, go get them. I believe that that would make me guilty if I received it of possession. But in this case, my understanding is that your client learned that Johnson had only two videos that he had seen of this individual boy and your client asked, do you think you can get another one? He had only two. There's much about the sequence of events here. Go for it if you can get more. Do you think you can get another one? In terms of he had only two, these weren't prefabricated items manufactured like a gun. This was, can you have another one made? Can you make another one? Can you create it? So in that sense, it's very much unlike the manufactured item and there's a level of involvement and request for a particular person's involvement that seems to me quite distinct. Why is that incorrect? Because I believe, Judge, that in this case, Johnson, the exploiter, has been creating videos and all of his victims and all of his boys... But I'm talking just about John Doe, that there was a specific interest in John Doe. Your client knew that Johnson had only two. There was no reason to believe that he had any more. And then the sequence of events where he had been able to get a roughly 15-minute video, would he be able to do another one? Johnson responds that Doe was mad at him and he wouldn't be able to get one immediately. But kind of, I'll work on it. It seems to me that the jury was entitled to infer that these were being created at the behest of your client. Why is that an irrational inference? Because every buyer similarly situated is depending on John Johnson and every buyer in the analogous criminal case is understanding that there should be a new product, there should be new guns that were transported. If I'm a thief in terms of stolen property and I rely on X to commit burglaries and I'd like a particular place that he commits burglaries, and I say, you know what? I want all of your stolen property from all your stores, but if you can go and get that other stuff that you already got, that would be great. I am not basically criminally liable as an actor for the actual burglary itself. I'll be guilty when I receive that, but I don't believe that you're sharing the same intent. And I believe that there is a question that's glossed over. All right. Good morning, Your Honors. My name is Sarita Kamadi-Reddy. I'm an assistant U.S. attorney in the Eastern District of New York. The defendant bears a very heavy burden to show that no reasonable jury could find guilt beyond a reasonable doubt. The defendant has not and cannot meet that burden here simply because of the specific facts of this case. The defendant's communications make clear that he knew that there were only two videos of John Doe in existence before the defendant began making requests for more, and that any further videos would have to be newly created, and therefore every request afterwards. If Johnson had been able to make the requested video, but then Mr. Naim didn't purchase it and didn't follow up any further, would Naim still be guilty of attempt? In that instance, Your Honor, I believe Mr. Naim would be guilty of both attempt and production. The purchasing is really a receipt. The fact that it's been created as a result of his request is in itself a crime. So it's a separate wrong? Yes. Because of the pattern of conduct that the government established at trial, a pattern that included not only that the defendant had a fixation on this particular boy, but also that the defendant's relationship with the creator of these videos was a relationship in which he had control and in which that creator repeatedly accommodated his requests. Remember that the defendant requested that two videos be taken down, and Johnson took them down. The defendant requested that a certain posting on the website that identified him be taken down, and Johnson took it down. The defendant requested the creation of the third video, and the defendant requested creation of additional videos, all in light of that previous background of control and conduct. I think in light of that- The jury acquitted Mr. Naim on the sexual exploitation count, but convicted him on the attempt count. How do you reconcile those? I think in light of the established pattern of conduct in this Court's previous rulings, particularly in Abdullah, which is on point here, that such in light of an established pattern of conduct, an additional communication is sufficient for attempt, the government requests that this Court affirm the conviction and sentence. Thank you. Mr. Escoceda, you reserve two minutes for rebuttal. Mr. Carney, just in response to your question, in this particular case, two anomalies. One is if in fact, as the record stands now, John Johnson would not be guilty of the attempt, because there's nothing in the record that after the request, John Johnson did anything. There's no overt act on his part. The other side of the equation is if this was taken to fruition and there was a completed act where he did produce a video, in that particular case, just going quickly back to the issue of intent, my client is in the same exact position because he's still a buyer who has to commit the next crime of buying and possessing and receiving. So that does not accomplish his intent. There is a fourth request, which the Court focuses on, in terms of the particular attempt in this case, and in Judge Garifu's decision, page 20 and forward, there basically he recites four particular statements in the email communications from my client. Those are interspersed with numerous other calls at different occasions, numerous other communications, and it includes all context of banter. But this is what happens, and this is what judge, this is what an affirmative means in this particular case. The first email communication basically is on February 7th. And in that, it's on February 14th, I apologize, Nam again reached out to Johnson asking, can we do another John? This, the Court characterizes first request for fourth video. Johnson replied, I'll keep you posted. He seems a little mad at me right now, lol. Nam asked, why? Johnson replied, lol, I'm not sure, you know how teenagers can be. That's the first communication. So at that point, Johnson is basically saying, it looks like John Doe is not around or is not willing to engage in this, and I haven't done anything further with John Doe. The second communication is two weeks later, there's more communications in between, and there's an off-the-cuff response at the end of that email where my client basically says, hey, think you can get John again. There's no response from Nam, it's not, well, I've gone out and tried, we're going to try, I need some money, there's nothing, there's no overt action, there's another request, it's clear in the record, that's the second request. Two more weeks later, on March 30th, is what the Court characterizes as the third request. And again, interspersed with a long communication, with other communications in the interim, there's no, my client is not possessed with the notion of John Doe, unfortunately, he's just looking to purchase videos. And as morally repugnant as that may be, that he knows John Doe, again, you have the third request, hey, think you can get John Doe again. And if he were possessed with John Doe, I think that was your phrase, and would the jury have been allowed to use that piece of information to say you're guilty of what you're charged with? Judge, I think it would be a piece of information if he was, perhaps I used the word possessed improperly, but preoccupied. He had a preference for John Doe because he had, by happenstance, identified him from one of the videos. So he could put a name to John Doe. He knows John Doe from a prior experience, he sees that after eight months. So his last communication, Judge, is finally on April 21st, and basically, there's other things being cited back and forth, and after three pages of dialogue, at the end, my client says, and BTW, page 24 of Judge Garifu's decision, let me know if you ever get that John Dude again. Johnson again, he's pretty much thrown in the towel on being on cam. I think so, probably won't be getting any more of him. There's no overt act other than the mere request, be it four times, on anybody's part to actually induce the victim in this case. I believe the case law is clear, whether it's an undercover or a real victim, there has to be some overt act in conjunction with the attempt to induce that victim. It does not exist in this case. Thank you. We'll take the case under advisement.